# THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 69

APRIL TERM, A.D. 2026

June 30, 2026

BRIAN RIBERA,

Appellant
(Defendant),

v.

S-25-0269

JENNIFER RIBERA,

Appellee
(Plaintiff).

*Appeal from the District Court of Park County*
*The Honorable Bobbi Dean Overfield, Judge*

*Representing Appellant:*
Mikole Bede Soto of Chapman Valdez & Lansing, Sheridan, Wyoming, and Dick J. Baldwin of Parr Brown Gee & Loveless, P.C., Salt Lake City, Utah.

*Representing Appellee:*
Christopher J. King of Apex Legal, PC, Worland, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]   This case involves an appeal from a divorce decree.  Brian Ribera challenges the district court's denial of his motion for psychological evaluations of the parties pursuant to Rule 35 of the Wyoming Rules of Civil Procedure (W.R.C.P.).  Mr. Ribera also challenges the district court's custody decision, portions of the property division, and its decision regarding ownership of the dog.  We affirm.

## ISSUES

[¶2]   Mr. Ribera raises four issues, which we rephrase as follows:

> I.   Did the district court abuse its discretion by denying Father's motion for psychological examinations under W.R.C.P. 35 (2025) when both parties made allegations of either substance abuse or physical abuse?
>
> II.   Did the district court abuse its discretion when it awarded primary physical custody of the children to Mother considering Father's allegations of substance abuse and parental alienation?
>
> III.   Did the district court abuse its discretion by considering assets that were "owned" by other entities when dividing the marital estate?
>
> IV.   Did the district court abuse its discretion when it ordered the parties to share custody of the dog on the same schedule as the children?

## FACTS

[¶3]   Brian Ribera (Father) and Jennifer Ribera (Mother) were married on May 7, 2009.  Three children were born during the marriage: RER, EKR, and RHR.  Mother also has a child from a previous marriage, who is now an adult.  Mother's divorce from her first husband was finalized in 2006, and a custody modification was held in 2008 (the prior divorce action).

[¶4]   For most of the marriage, Father served in the Navy.  The parties made the decision that Mother would not work outside of the home while the children were young.  Prior to the marriage, Mother worked as a hairstylist, and she returned to this industry in 2018.

1

[¶5]    Before the marriage, Father and a friend jointly purchased a property on Riviera Drive in San Diego, California.  The parties lived at this address until Father was transferred to Virginia Beach, Virginia.  When the parties first moved to Virginia Beach, they resided in a condo on Seashore Point that Father had purchased prior to the marriage.  When their family grew too large for the condo, Father purchased a property on Kanturk Court in Virginia Beach, Virginia.  Father retired from the Navy in June 2020.  Mother and the children moved to Wyoming in September 2020, and Father later joined them.  Father purchased a home on Pat O'Hara Mountain Drive in Cody, Wyoming, in May 2021.  Mother's name was not included on the deeds to any of these properties.

[¶6]    Following his retirement from the Navy, Father accepted contract employment that involved travel and required him to be away from home for extended periods.  He then founded a non-profit organization called Military Mobility.  This organization is intended "to help support veterans in their transition back to civilian life."  Before the divorce, Father served as the founder, owner, president, and administrator of the business.  In addition, as the "caretaker" of Military Mobility's property, Father had full access to all the property owned by the organization, and he frequently used it for his and the family's personal use.

[¶7]    In 2019, the parties purchased a goldendoodle, Sadie.  Sadie received some training as a service animal in July 2021.  Father never took Sadie with him when he traveled for work, but the dog did sleep with him every night when he was home until the parties separated.  Sadie was also considered the "family dog."  The children have a loving relationship with Sadie, and they find her presence comforting.

[¶8]    Mother filed for divorce in March 2024.  At the time she filed for divorce, Mother also sought an ex parte protective order, which was granted by the circuit court.  In August 2024, after conducting a multi-day evidentiary hearing, the circuit court granted Mother a one-year domestic violence protection order against Father, finding he had committed at least one act of domestic violence.  This order also granted the parties joint custody of the children "alternating every other week."

[¶9]    During the hearing on the protective order, Mother learned the title to the Chevy Suburban she had been driving was not held in the parties' names; Father had transferred ownership of the vehicle to Military Mobility.  Through discovery Mother learned Father transferred the titles to several other vehicles from his individual name to either "Brian Ribera d/b/a Military Mobility" or to himself and/or Military Mobility.

[¶10]  Father filed his initial disclosures in this matter on July 5, 2024.  In that document, he alleged Mother's "proven and documented alcohol abuse and drug use ha[d] negatively affected the children and impacted their safety."  He further asserted "[h]er mental state ha[d] been permanently affected due to over 20 years of substance abuse."  He claimed to have videos of her inappropriate behavior while intoxicated, and he discussed an incident where she was driving while intoxicated.

2

[¶11]   On March 19, 2025, more than eight months after he filed his initial disclosures and less than a month before the trial was set to begin, Father filed a motion to order both parties to undergo psychological evaluations pursuant to W.R.C.P. 35.   He asserted the evaluations were "necessary to provide the [c]ourt with an objective assessment of each party's mental health, fitness to parent, and credibility regarding" Mother's claims of physical abuse and Father's claims regarding Mother's alcohol abuse.   He asserted "[t]he scope of the evaluation would be to access [sic] [Mother's] and [Father's] current mental status and how it impacts their abilities as parents."   Father suggested the guardian ad litem (GAL) be allowed to select a neutral examiner.   After holding a hearing, the district court denied Father's motion.

[¶12]   On April 15, 2025, two days before the divorce trial was scheduled to begin, Mother filed a motion for a continuance.   The parties' daughter, EKR, had been admitted to the hospital after expressing suicidal thoughts and engaging in self-harm.   Over Father's objection, the district court continued the trial until May 12, 2025.

[¶13]   The district court issued its decision letter on July 9, 2025.   The district court awarded primary physical custody of the children to Mother, with "substantial parenting time" for Father.[1]   The custody schedule crafted by the district court resulted in Mother having the children approximately 60% of the time and Father having the children 40% of the time.   Although Father argued Sadie was his service animal, the district court found the "overwhelming evidence" showed the dog was "a beloved family pet."   Accordingly, the district court ordered "the dog be shared by the parties on the same schedule as the minor children[,]" and if Mother did not want the responsibility of transporting Sadie back and forth, then the dog would remain with Father.

[¶14]   The district court awarded Father all four pieces of real property.   To account for the fact that two of the properties were purchased prior to the marriage and Father might have to pay an additional portion of the mortgage on the California property due to the co-owner's bankruptcy, the district court found it would be equitable for Father to pay Mother $536,000 for her share of the equity in those properties.

[¶15]   Father's initial disclosures listed 15 financial accounts with a cumulative balance of over $155,000 at the time the divorce was filed.   One of these accounts was for a business called Drive Growth, LLC, of which Father was the sole member.   The district court determined Mother should be awarded "approximately half of the value of the bank accounts at the time the initial disclosures were prepared minus the $19,000 she ha[d]

---

[1] Due to EKR's mental health issues, the district court ordered the parties to follow a transitional visitation schedule as recommended by her counselors, even if that meant following a different schedule than that utilized for the other two children.

already taken." The district court ordered Father to pay Mother $58,500 for her interest in these various financial accounts.

[¶16] The district court also found the evidence showed Father owned many vehicles prior to the separation that were transferred to Military Mobility or to himself and/or Military Mobility after the divorce was filed. The district court found these transfers were "suspicious at best or an egregious attempt to hide the property or somehow take it out of consideration for the divorce proceedings at worst." Because Father could no longer legally transfer one of these vehicles into Mother's name, the district court found it would be equitable to award Mother a payment of $30,000 to represent the "value of the vehicles, boats, camper, trailer, and motorcycles that the parties previously had the benefit of using or was owned solely or jointly by Father during the marriage and was part of the marital estate." When these three payments are added together, Father was ordered to pay Mother a total of $624,500. This appeal timely followed.

## STANDARD OF REVIEW

[¶17] Father appeals the district court's decisions on child custody and property division.

> We review the district court's custody decision for an abuse of discretion. A court abuses its discretion if it acts in a manner that exceeds the bounds of reason under the circumstances, violates some legal principle, or ignores a material factor deserving significant weight. We consider the evidence presented in the light most favorable to the district court's decision, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence. We do not reweigh the evidence.

*Amadio v. Amadio*, 2025 WY 21, ¶ 12, 564 P.3d 259, 264 (Wyo. 2025) (quoting *Vassilopoulos v. Vassilopoulos*, 2024 WY 87, ¶ 7, 557 P.3d 725, 728–29 (Wyo. 2024)) (citation modified).

[¶18] Likewise, we review a district court's property division for an abuse of discretion. *Id.* at ¶ 14, 564 P.3d at 264–65 (citing *Bloedow v. Maes-Bloedow*, 2024 WY 115, ¶ 11, 558 P.3d 576, 581 (Wyo. 2024)). "We will not disturb a property division in a divorce case, except on clear grounds, as the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions." *Bloedow*, ¶ 12, 558 P.3d at 582 (quoting *Metz v. Metz*, 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003)). We will find the district court abused its discretion if "the property disposition shocks the conscience of this Court and appears to be so unfair and inequitable that reasonable people cannot abide it." *Id.* (quoting *Hyatt v. Hyatt,* 2023 WY 129, ¶ 11, 540 P.3d 873, 880 (Wyo. 2023)).

4

[¶19] Like other rulings on discovery issues, we review a district court's decision on a party's W.R.C.P. 35 motion for an abuse of discretion. *See Domenico v. Daniel*, 2024 WY 2, ¶¶ 31–36, 76, 541 P.3d 420, 430–31, 439 (Wyo. 2024) (holding the district court abused its discretion when it denied the GAL's Rule 35 motion); *Johnson v. Clifford*, 2018 WY 59, ¶¶ 28–35, 418 P.3d 819, 828–29 (Wyo. 2018) (holding the district court did not abuse its discretion when it denied the father's motion for Rule 35 evaluations). "[W]e will not reverse a district court's decision on a discovery matter unless it is an abuse of discretion." *Johnson*, ¶ 9, 418 P.3d at 823. "The question is whether the district court could have reasonably concluded as it did." *Pellet v. Pellet*, 2022 WY 65, ¶ 41, 510 P.3d 388, 401 (Wyo. 2022) (citing *Sears v. Sears,* 2021 WY 20, ¶ 13, 479 P.3d 767, 772 (Wyo. 2021)).

## DISCUSSION

### I. Did the district court abuse its discretion by denying Father's motion for psychological examinations under W.R.C.P. 35 when both parties made allegations of either substance abuse or physical abuse?

[¶20] Father's W.R.C.P. 35 motion alleged psychological evaluations were necessary due to Mother's allegations of physical abuse and Father's allegations regarding Mother's substance abuse. He alleged Mother had an "ongoing issue with alcohol abuse[,]" and she had a "documented history of alienating behaviors in her prior divorce action." He asserted the scope of the evaluation should be to assess both parties' "current mental status and how it impacts their abilities as parents."

[¶21] The district court denied Father's motion because it was untimely. In addition, the allegations related to Mother's behavior stretched from 2008–2017, and the district court considered them "outdated." The district court found Father failed to identify any current mental health issues that would establish good cause to order psychological evaluations. The district court noted the GAL had already completed his report and recommendation, and he was not requesting psychological evaluations of either party. The district court further found Father failed to comply with W.R.C.P. 35(a)(2)(B) by not stating why the evaluation should be done, what issues would be evaluated, who the evaluator would be, and when it would be done. The district court concluded "without further information of current psychological issues," it would be inappropriate to grant Father's untimely motion.

[¶22] Father asserts the district court abused its discretion when it denied his motion. He asserts his motion was timely, and he did show good cause for granting the motion because the concerns were "recent and ongoing." We will address these arguments in turn.

### A. The Motion was Untimely

[¶23] Father argues his motion, which was filed less than one month before trial was

scheduled to begin, was timely under this Court's decision in *Domenico v. Daniel*, 2024 WY 2, 541 P.3d 420 (Wyo. 2024). Father's reliance on *Domenico* is misplaced.

[¶24] *Domenico* involved a unique procedural posture where the district court bifurcated a custody modification trial, with the first phase focusing on whether there had been a material change in circumstances, and the second phase determining if a modification would be in the children's best interest in the event there had indeed been such a material change in circumstances. *Id*. at ¶ 9, 541 P.3d at 425. During the first phase of the hearing, the mother presented evidence showing "significant improvement in her parenting skills and mental health issues." *Id*. at ¶ 10, 541 P.3d at 425. After the district court issued its ruling finding there had been a material change in circumstances, but before the trial on whether the modification was in the children's best interests, the GAL moved for a W.R.C.P. 35 evaluation. *Id*. at ¶ 12, 541 P.3d at 426. He asserted the evaluation conducted by the mother's counselor was not based on objective criteria because the mother had failed to disclose material information about her past mental health treatment. *Id*. at ¶ 15, 541 P.3d at 427. The GAL also proposed the name of an evaluator "who could complete the evaluation and report **in time to allow the trial schedule to proceed without change**." *Id.*(emphasis added). We found the district court abused its discretion by denying the GAL's motion because the record contained facts and allegations that would support the contention that the mother's mental health could substantially impact her ability to properly supervise the children, and the district court erred when it found the mother's mental health was not relevant to the best interests of the children. *Id.* at ¶¶ 35–36, 541 P.3d at 430–31.

[¶25] In this case, despite being on notice of the physical and substance abuse allegations for many months, Father's motion was not filed "in time to allow the trial schedule to proceed without change." *See id*. at ¶ 15, 541 P.3d at 427. At the hearing, Father conceded the trial would have to be continued for "several months" for the evaluations to be completed. The district court could reasonably conclude there were no allegations in the motion "that would warrant . . . having to push this trial date out for an extended period of time."[2] Therefore, the district court did not abuse its discretion when it found Father's motion was untimely.

### B. Father Failed to Show there was Good Cause to Grant the W.R.C.P. 35 Motion

[¶26] As we recognized in *Domenico*, "a custody determination does not create an automatic right to a psychological evaluation . . . ." 2024 WY 2, ¶ 34, 541 P.3d at 430. Rule 35 allows a court to order a party to submit to a mental examination "only on motion

---

[2] We note Father's representations to the district court about his willingness to agree to a continuance were somewhat contradictory. While he appeared to be willing to agree to a months' long continuance when he filed his Rule 35 motion, he objected to continuing the trial at all when Mother asked for a postponement due to EKR's hospitalization. Further, he did not renew his motion for Rule 35 evaluations after the trial was ultimately continued.

for good cause and on notice to all parties and the person to be examined[.]" W.R.C.P. 35(a)(1)–(2)(A). "'Good cause' is more than simply showing the evidence is relevant . . . ." *Johnson*, 2018 WY 59, ¶ 32, 418 P.3d at 828 (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S. Ct. 234, 242–43, 13 L. Ed. 2d 152 (1964)).

> The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words "good cause" the Rules indicate that there must be greater showing of need under . . . [Rule] 35 than under the other discovery rules.

*Schlagenhauf*, 379 U.S. at 118, 85 S. Ct. at 242 (quoting *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962)) (citation modified). Similarly, "good cause" cannot be established merely by citing to "conclusory allegations of the pleadings." *Johnson*, 2018 WY 59, ¶ 32, 418 P.3d at 828 (quoting *Schlagenhauf*, 379 U.S. at 118, 85 S. Ct. at 242). "[W]hat constitutes good cause will vary on a case[-]by[-]case basis." *Id.* (citing *Schlagenhauf,* 379 U.S. at 118–19, 85 S. Ct. at 243).

[¶27] To establish good cause, "the movant [must] demonstrate that 'each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.'" *Johnson*, ¶ 32, 418 P.3d at 828 (quoting *Schlagenhauf*, 379 U.S. at 118, 85 S. Ct. at 242–43). The motion must contain "verified allegations that the parent in question is having mental problems that could substantially impact his or her ability to properly raise children." *Domenico*, 2024 WY 2, ¶ 34, 541 P.3d at 430 (quoting *Wade v. Wade*, 124 So. 3d 369, 375 (Fla. Dist. Ct. App. 2013)). "The ability of the movant to obtain the desired information by other means is also relevant." *Schlagenhauf*, 379 U.S. at 118, 85 S. Ct. at 243.[3]

[¶28] In this case, the motion consisted of nothing but conclusory statements that Mother "ha[d] an ongoing issue with alcohol abuse[,]" a "documented history of alienating behaviors in her prior divorce action[,]" and an allegation that she was "exhibiting alienating behaviors in this matter." Similarly, the motion contained a conclusory statement that Mother had accused Father of "being emotionally, financially, and physically abusive." The transcript of the hearing shows Father presented few facts that would have supported granting the motion. Father indicated he filed the motion due to the allegations that were made during the protection order hearing, "as well as issues of alcoholism by [Mother]." Father referred to Mother's 2017 Driving While Under the

---

[3] At trial, the evidence established both parties had seen various counselors throughout the marriage. Father's Rule 35 motion did not indicate why information on the parties' mental states would not have been available through these witnesses.

7

Influence (DUI) conviction and comments about potential parental alienation made in 2008 by the judge in Mother's prior divorce case. Father argued the evaluations were warranted in this case "because we have a history of [Mother's] drinking, of potential parental alienation[, and] because of the allegations that were made about [Father] . . . ."

[¶29] When asked for his position on the Rule 35 motion, the GAL indicated there were no "new allegations" in this case, and he did not identify psychological evaluations "as a need" when making his recommendation to the court. The GAL informed the district court he did not object to the evaluations "because it would provide the [c]ourt and myself with more information. We might not learn anything, but we [m]ight . . . ."

[¶30] Unlike *Domenico*, Father's motion did not contain "facts and allegations that would support [his] contention that [the parties'] mental health could substantially impact [their] ability to properly supervise the children." 2024 WY 2, ¶ 35, 541 P.3d at 430–31. Instead, he relied on conclusory statements and allegations about past events without showing how those behaviors currently impacted either parent's fitness. While the evaluations might have provided the district court with some additional relevant evidence, mere relevance is not enough to show good cause under Rule 35. *Johnson*, 2018 WY 59, ¶ 32, 418 P.3d at 828 (quoting *Schlagenhauf*, 379 U.S. at 118, 85 S. Ct. at 242–43). The district court could reasonably conclude Father failed to show good cause to order the evaluations, and it did not abuse its discretion when it denied his Rule 35 motion.[4]

## II. Did the district court abuse its discretion when it awarded primary physical custody of the children to Mother considering Father's allegations of substance abuse and parental alienation?

[¶31] Father asserts the district court abused its discretion when it awarded Mother primary custody because it "ignored significant undisputed evidence about [Mother's] substance abuse and attempts to alienate the children from [Father.]" He also asserts the district court's order conflicts with the GAL's "key conclusions" without any evidentiary basis.

### A. Mother's History of Alcohol Use

[¶32] When awarding custody and visitation, the district court must consider the non-exhaustive statutory factors set forth in Wyoming Statute § 20-2-201(a). These factors include a parent's "relative competency and fitness" and "mental ability" to care for each child. Wyo. Stat. Ann. § 20-2-201(a)(iii), (ix) (2025). We have recognized a parent's

---

[4] Father also asserts the district court misinterpreted the requirements of W.R.C.P. 35(a)(2)(B) when it improperly found the motion must state why the evaluation should be done, what issues would be evaluated, who the evaluator would be, and when it would be done. Because we find his motion was untimely and failed to show good cause, we decline to address this argument.

alcohol use implicates these two factors. *See, e.g., Kidd v. Jacobson*, 2020 WY 64, ¶ 18, 463 P.3d 795, 799 (Wyo. 2020) (citing *Womack v. Swan,* 2018 WY 27, ¶ 34, 413 P.3d 127, 139 (Wyo. 2018)). Contrary to Father's assertion, the district court did not ignore the evidence regarding Mother's history of alcohol use. The district court's decision letter states:

> There was evidence, videos, photos, and testimony of Mother's excessive use of alcohol at times during the marriage. Specifically, a DUI in Virginia in 2017. She continued to excessively use alcohol when the parties moved to Wyoming. The [c]ourt saw the videos of Mother when intoxicated in compromising positions and with the children observing the same. Mother has either consumed substantially less alcohol or been sober for almost two (2) years prior to the divorce hearing.

When specifically addressing the relative competency and fitness factor, the district court stated:

> The [c]ourt believes each parent is competent, fit, and capable of parenting. The [c]ourt acknowledges Father's allegations of Mother's inability to parent due to prior alcohol use. Mother does not deny the prior alcohol use. Testimony and evidence show videos of Mother being intoxicated in front of the children and even passing out. Although these behaviors are not condoned, they did take place several years before the divorce was filed. Father, even knowing that his wife struggled with alcohol, had no issues leaving the children in her care while he went on extensive work trips throughout the marriage. It is not disputed that she was the primary caregiver of the children, even during the time frame she was using substantial amounts of alcohol. Father presented pictures alleging Mother drank alcoholic drinks from a more recent trip to Hawaii together. Mother alleged they were non-alcoholic drinks. Besides the Hawaii vacation, there was no evidence that Mother has used or consumed extensive amounts of alcohol for one to two years. Mother did testify that her decline in drinking was what helped her recognize the bad situation she was in and her becoming sober was actually the trigger for her filing for divorce. Father has a domestic violence protection order against him, but even after entering the order, the [c]ircuit [c]ourt granted Father substantial time with the children. The protection order allegations primarily involved altercations with Mother and Father, rather than the children. The [c]ourt

9

finds each parent is equally competent and fit to parent the minor children.

These passages show the district court considered the evidence Father presented regarding Mother's previous alcohol use, but it found the evidence regarding Mother's current sobriety to be persuasive. We will not reweigh this evidence. *See Smith v. Smith*, 2025 WY 128, ¶ 25, 580 P.3d 507, 515 (Wyo. 2025).

## B. Parental Alienation

[¶33] During the trial, Father alleged Mother was engaging in parental alienation. He claimed she was not fostering a loving bond between him and the children. The district court acknowledged Father's allegation of parental alienation but found there was no evidence to support that allegation. Father alleges this finding was clearly erroneous. "A finding is clearly erroneous if 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Bloedow*, 2024 WY 115, ¶ 13, 558 P.3d at 582 (quoting *Meiners v. Meiners,* 2019 WY 39, ¶ 8, 438 P.3d 1260, 1266 (Wyo. 2019)). "We will not substitute ourselves for the district court as finders of fact, and we will not re-weigh disputed evidence since the district court is in the best position to assess the witnesses' credibility and weigh their testimony." *Id.* (citing *Meiners*, ¶ 8, 438 P.3d at 1266).

[¶34] Father does not offer a definition of parental alienation. In *Womack v. Swan*, we referenced, but did not explicitly adopt, the definition that had been used by the district court: "Parental alienation, as defined by the district court, 'generally means a child in a divorce situation unjustifiably rejects one parent based on negative influence from the other parent.'" 2018 WY 27, ¶ 4 n.1, 413 P.3d at 131 n.1. Much research has been done on the issue of parental alienation in recent years, yielding the following updated definition: "alienation is a child who expresses, freely and persistently, unreasonable negative feelings and beliefs (such as anger, hatred, rejection, and/or fear) toward a parent that are significantly disproportionate to the child's actual experience with that parent." George L. Blum, Annotation, *Parental Alienation in Cases Involving Child Custody Issues, Including Sole Custody Awards, Modification of Standing Custodial Arrangements, and Shared Custody Determinations—21st Century Cases,* 73 A.L.R.7th Art. 5 (2022).

[¶35] The "undisputed evidence" of alienation Father cites to in his brief comes almost entirely from the GAL's proposed findings of fact rather than from any testimony presented at the trial. The parties' proposed findings of fact are not "evidence," but are instead "the parties' respective interpretation of the evidence which the [trial] court may accept or reject." *Plante v. Plante*, 531 A.2d 926, 927 n.3 (Vt. 1987); *see also Armstrong v. O'Connell*, 408 F. Supp. 825, 827 (E.D. Wis. 1976) ("The parties' proposed findings of fact and conclusions of law are not evidence . . . ."). We have recognized "[i]t is not the duty of this Court to scour the record to find confirmation of party assertions; it is the duty

of the proponent to support their position with proper citation to the record." *Davidson-Eaton v. Iversen*, 2022 WY 135, ¶ 62, 519 P.3d 626, 645 (Wyo. 2022) (quoting *Black v. William Insulation Co., Inc.*, 2006 WY 106, ¶ 21 n.4, 141 P.3d 123, 131–32 n.4 (Wyo. 2006); W.R.A.P. 7.01(f) (2022)).

[¶36]  We note the GAL's concerns about potential alienation set forth in his proposed findings of fact stemmed from the children not returning calls to Father while in Mother's care.  The GAL recommended "regular contact" between the children and Father because "the children do not speak to him otherwise."  The district court addressed any concerns it or the GAL might have had about either parent improperly limiting communication with the children when it found: "Communication can be improved by making sure the children have access to the other parent when they are with the other parent."  The district court ordered the parties to "allow the children to freely contact the other parent and allow the other parent to contact the children via cell phone or other technology at reasonable times while they are with the other parent."  In addition, the district court adopted a visitation schedule similar to the one proposed by the GAL, which allows "regular contact" between Father and the children.

[¶37]  Father cited to a portion of his trial testimony regarding his lack of visitation with the children for the five months after the ex parte protection order was entered.  However, this testimony did not establish any of the children rejected him based on Mother's actions or that they are expressing persistent, unreasonable negative feelings and beliefs toward Father that are significantly disproportionate to their actual experience with Father.  Father points to the GAL's proposed findings related to the deterioration in the relationship between Father and E.K.R.  These proposed findings of fact are not evidence. *See Plante*, 531 A.2d at 927 n.3; *Armstrong*, 408 F. Supp. at 827.  Further, the GAL's proposed findings state: "[Father] testified he believes that [Mother] is engaging in behavior that is causing alienation between him and his children, especially E[K]R."  Citing to Father's own belief is not "undisputed evidence" that Mother was engaging in such behavior.  Because Father did not cite any evidence supporting his allegations of parental alienation, we cannot conclude the district court clearly erred when it found there was no evidence to support those allegations.

[¶38]  The district court provided a detailed analysis of all the statutory factors, including the parents' relative competency and fitness and mental ability to care for the children.  The district court considered the evidence presented regarding Mother's previous alcohol use and concluded it does not presently impair her ability to parent the children or render her unfit.  The district court's findings and conclusions are supported by the record. Further, Father failed to show the district court clearly erred when it found there was no evidence to support his allegations of parental alienation.  The district court did not abuse its discretion when it awarded primary custody of the children to Mother.

11

### III. Did the district court abuse its discretion by considering assets that were "owned" by other entities when dividing the marital estate?

[¶39] Father asserts the district court "abused its discretion by calculating its division of the marital estate by attributing to [Father] assets owned by other entities without any findings supporting [its] decision to disregard the corporate form and treating those entities[] as if they were [Father's]." He claims the district court should not have ordered him to pay Mother for "vehicles owned by Military Mobility," or for half the value of Drive Growth, LLC's bank account.

[¶40] The division of marital property is governed by Wyoming Statute § 20-2-114(a) (2025), which states:

> [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.

[¶41] Under this statute, "all the parties' property is subject to distribution, including property one party owned prior to the marriage." *Bloedow*, 2024 WY 115, ¶ 16, 558 P.3d at 582 (citing *Hall v. Hall,* 2005 WY 166, ¶ 8, 125 P.3d 284, 287 (Wyo. 2005)). "The statutory considerations 'do not require an equal division of property, and we have said a just and equitable division is as likely as not to be unequal.'" *Id.*, 558 P.3d at 582–583 (quoting *Hyatt,* 2023 WY 129, ¶ 16, 540 P.3d at 881). We review the equity of a property division "based on the overall distribution, not a narrow focus on the effect of any single disposition." *Id.* (citing *Morrison v. Rubio,* 2022 WY 26, ¶ 19, 504 P.3d 251, 255–56 (Wyo. 2022)).

#### A. The district court did not abuse its discretion by ordering Father to pay Mother an equitable amount for the value of vehicles he transferred to Military Mobility after the divorce was filed.

[¶42] Father asserts Military Mobility is a 501(c)(3) organization, and federal law prohibits any part of the "net earnings" of such an organization from inuring to the benefit of any private shareholder or individual. He asserts that upon dissolution of the entity, the assets would be distributed to the government for a public purpose or to another charitable organization rather than to its shareholders. Because of these regulations, he asserts the district court should not have "ordered [him] to pay [Mother] for interests in assets owned by Military Mobility, not [Father]."

[¶43] The district court did not award Mother any portion of Military Mobility's net earnings, nor did it order Father to transfer Mother any property that was titled in the name of Military Mobility. Instead, it ordered Father to pay Mother "$30,000 for the value of the vehicles, boats, camper, trailer, and motorcycles that the parties previously had the benefit of using or was owned solely or jointly by Father during the marriage and was part of the marital estate." The district court found Father's transfers of these assets to Military Mobility were "suspicious at best or an egregious attempt to hide the property or somehow take it out of consideration for the divorce proceedings at worst." The record supports this finding.

[¶44] The evidence established Military Mobility owned or co-owned with Father vehicles, boats, airplanes, motorcycles, a camper, camping equipment, trailers, and other tools and equipment. Both parties testified they had the benefit of using these assets for their personal use during the marriage, regardless of whether they were owned by Father or Military Mobility. The evidence at trial showed Father transferred multiple vehicles that had been held in his individual name to either "Brian Ribera d/b/a Military Mobility" or to himself and/or Military Mobility. This included the 2010 Chevy Suburban that Mother had driven for several years. These transfers were done just over a month after Mother filed for divorce.

[¶45] In *Breitenstine v. Breitenstine*, when dividing the marital estate, the district court considered the husband's transfers of marital assets to a "family trust" while the divorce was pending and found the trust was created for the sole purpose of defrauding current and potential creditors, including the wife. 2003 WY 16, ¶¶17–18, 62 P.3d 587, 592 (Wyo. 2003). After considering the position the parties would be left in after the divorce and the relative merits of the parties, the district court awarded the wife one half of the marital estate, even though most of the assets were inherited from the husband's parents. *Id.* at ¶¶ 11–13, 17–18, 62 P.3d at 591–92. We found there was evidence to support the district court's finding because there were "badges of fraud" in the transfers to the family trust. *Id.* at ¶¶ 20–25, 62 P.3d at 593–94. These badges included a lack of consideration, a close relationship between the parties, retention of the benefit of the property transferred, the chronology of the events surrounding the transfer, and whether the transfer takes place during pending litigation. *Id.* at ¶ 20, 62 P.3d at 593. We found the record supported the district court's finding the husband intended to defraud his creditors, including the wife, when making these transfers. *Id.* at ¶ 25, 62 P.3d at 594.

[¶46] Many of those same badges of fraud are present here. Father did not show he received any consideration, including a 1098(c) tax form, for his "donations" of these vehicles to Military Mobility. There was a close relationship between the parties to the transfer, and Father retained the benefit of the transferred property; as the "caretaker" of the property, Father had unfettered access to the property. The timing of the transfers was also suspicious because they were made while the divorce was pending and the ownership of these vehicles was at issue. We cannot say the district court's finding that these transfers

13

were suspicious or an attempt to hide assets was clearly erroneous, nor can we say it abused its discretion when it considered the value of the transferred or hidden assets when making the property division.

[¶47] Because Father took the position that all these vehicles belonged to Military Mobility and were not subject to division, he did not attempt to establish their value. The district court attempted to arrive at an equitable payment for Mother by considering the amounts Father personally borrowed to purchase some of these assets. For example, the 2022 Jeep Gladiator, which is titled in the name of "Brian Ribera d/b/a Military Mobility," had a purchase price of $64,147.24, and it was purchased partially with a personal loan taken out by Father.[5] Similarly, the Ford F450 was purchased with personal funds by Father for approximately $85,000. This vehicle is titled "Brian F Ribera or Military Mobility." Based on the evidence related to the value of these two vehicles alone, not to mention the numerous other vehicles, the district court could have reasonably concluded it was equitable to award Mother $30,000 for the value of the assets she had the benefit of using during the marriage, which Father transferred or "donated" while the divorce was pending. The district court did not abuse its discretion when it ordered Father to pay this sum.

## B. The district court did not abuse its discretion when it divided the value of the financial accounts.

[¶48] Father asserts the district court abused its discretion when it awarded Mother half of Drive Growth, LLC's bank account as if it were his personal bank account. We note the district court did not award Mother half of Drive Growth's bank account. Rather, the district court awarded Mother $58,500 for her interest in the 15 financial accounts listed in Father's initial disclosures, which included an account in Drive Growth's name.

[¶49] Father correctly points out that "trial courts must exercise discretion and adjudicate marital property dispositions on a case-by-case basis using the best possible valuation method appropriate for that particular case." *Wallop v. Wallop*, 2004 WY 46, ¶ 5, 88 P.3d 1002, 1024 (citing *Neuman v. Neuman,* 842 P.2d 575, 582 (Wyo.1992)). However, "[w]here, as here, neither party presented expert or other credible evidence on the valuation of the business, the district court was left to make its own assessment of the value from the limited evidence presented." *Ransom v. Ransom*, 2017 WY 132, ¶ 31, 404 P.3d 1187, 1194 (Wyo. 2017). The primary evidence related to the value of this business came in the form of 2021 and 2022 tax returns attached to Father's financial affidavit. These documents

---

[5] The parties did not designate all the trial exhibits. Thus, the district court had the benefit of additional exhibits not available for this Court's review. We have repeatedly stated the Appellant has the burden of providing an adequate record to enable this Court's review. *See, e.g., Pokrovskaya v. Van Genderen*, 2025 WY 50, ¶ 36, 567 P.3d 1172, 1182 (Wyo. 2025) (citing *Rush v. Golkowski*, 2021 WY 27, ¶ 16, 480 P.3d 1174, 1178 (Wyo. 2021)). Based on the record that is before us, we cannot say the district court abused its discretion when arriving at an equitable sum to award Mother.

showed Drive Growth had gross income of $32,537 and $56,709 during these two years. Although the tax returns show a "loss" for this business both years, this is primarily due to between $15,000 and $31,000 in "Depreciation and Section 179 expense deduction[s]." Therefore, the tax returns indicate Drive Growth does generate some cashflow. The only other evidence regarding the value of Drive Growth was Father's initial disclosures, which indicated the company had a bank account with a balance of $27,270.42. Based on this extremely limited evidence, the district court could conclude Drive Growth had some value, even if it was just what was in the bank account at the time of the separation.

[¶50] The district court had authority to divide all the parties' property, including Drive Growth, under Wyoming Statute § 20-2-114(a). Therefore, it was not an abuse of discretion for the district court to consider Father would be retaining a 100% interest in Drive Growth when it was making an equitable division of the parties' other assets, including the numerous financial accounts. The district court did not award Mother half of Drive Growth's bank account. Instead, it awarded Mother a sum that was equal to half of the total amount that was in the parties' numerous financial accounts at the time of the separation. When looking at the property division as a whole, we cannot say the district court abused its discretion by awarding this sum to Mother.

### IV. Did the district court abuse its discretion when it ordered the parties to share custody of the dog on the same schedule as the children?

[¶51] Father asserts the district court abused its discretion by not awarding Sadie to him, who he contends is his service animal. "Under Wyoming law, dogs are property." *Cardenas v. Swanson*, 2023 WY 67, ¶ 16, 531 P.3d 917, 921 (Wyo. 2023) (citing Wyo. Stat. Ann. § 11-31-102 (2023)). Under Wyoming Statute § 20-2-114(a), all the parties' property is subject to distribution. *Bloedow*, 2024 WY 115, ¶ 16, 558 P.3d at 582 (citing *Hall,* 2005 WY 166, ¶ 8, 125 P.3d at 287). While there was some testimony Sadie was trained as a service dog, there was other testimony Father never actually used her as a service dog and she may have been purchased as a Christmas present for one of the children. When discussing who Sadie should be awarded to, the following exchange took place between Father and his attorney:

> Q. To switch gears for the interest of time, if you were awarded Sadie, do you have any thoughts on Sadie going between homes when the children move between homes?
>
> A. In the interest of this situation and everything and how it's affecting the family, I'd absolutely be okay with that.

The district court took Father at his word and ordered Sadie to be exchanged on the same schedule as the children. In the event Mother did not want the responsibility of transporting the dog back and forth, then the district court ordered Sadie to remain with Father. We

cannot say the district court abused its discretion by giving Father exactly what he requested. *See Thatcher & Sons, Inc. v. Norwest Bank Casper, N.A.*, 750 P.2d 1324, 1328 (Wyo. 1988) (citation omitted) ("Under the doctrine of invited error, if a party induces action by a court, the party cannot argue error because the court took such action.").

## CONCLUSION

[¶52]   The district court did not abuse its discretion when it denied Father's untimely Rule 35 motion, which also failed to show good cause for granting the requested psychological evaluations.  The district court did not ignore evidence regarding Mother's past alcohol use or Father's allegations of parental alienation.   Instead, the district court carefully considered all the statutory factors and arrived at a custody determination it believed to be in the children's best interests.  When dividing the marital estate, the district court did not abuse its discretion by considering the value of the vehicles Father transferred or "donated" to Military Mobility while this action was pending, nor did it abuse its discretion when it considered the value of Father's business and other financial accounts.  Even if Sadie could be considered a service dog,  Father informed the district court he would be willing to share custody of the dog on the same schedule as the children, and the district court did not abuse its discretion when it ordered him to do so.  Affirmed.

16